# PATRICE BELOFSKY, Plaintiff
## v.
# GENERAL ELECTRIC COMPANY, Defendant

Civ. No. 1994-41

District Court of the Virgin Islands

Div. of St. Croix

October 20, 1997

Scott Burton, Esq., *for Plaintiff*

R. Eric Moore, Esq., *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on defendant's motion in limine regarding the plaintiff's expert witness. For the reasons expressed herein, the Court will exclude the testimony of Ervin Leshner, R.P.E., the plaintiff's expert.

## I. Facts

Plaintiff filed a complaint on April 6, 1994 alleging that while visiting her parents on St. Croix in July of 1992 she was injured by a General Electric ["GE"] Monogram Series side-by-side refrigerator when the refrigerator door allegedly closed by itself with enough force to crush her left thumb. In her complaint, plaintiff claimed that GE was liable for the design and manufacture of a defective product, namely a refrigerator that created a danger for left-handed persons. Plaintiff has since amended her complaint on two occasions. At this time, plaintiff's claims are that GE failed to warn the plaintiff of the dangerous "pinch point" created by the small distance between the two doors and also failed to warn of the danger caused by loading heavy objects in the refrigerator door which would cause the door to close with greater force. Plaintiff also claims that the door-closing mechanism suffered from a defective design.

On December 1, 1996, plaintiff sent Mr. Ervin Leshner ["Leshner"] a letter requesting his opinion as an expert witness. A mere ten days later, and without examining the refrigerator, talking to plaintiff, or doing any independent investigation, Leshner issued a report based solely on the representations of plaintiff and plaintiff's counsel contained in the letter. His report regurgitated the facts of plaintiff's letter and concluded with an opinion that plaintiff's injuries were caused by a dangerous pinch point and defective cam in the refrigerator door. Defendant denied, and continues to deny, plaintiff's allegations.

The first time any expert looked at the refrigerator was on March 7, 1997, when defendant's expert witness, Mr. Cherry ["Cherry"] examined it at plaintiff's parents' home. By this time, the refrigerator was no longer in use, and had been moved and stored on the back porch. Cherry reported that a visual inspection showed that the unit had been damaged, perhaps by exposure to hurricanes. Specifically, Cherry stated that a cam riser was broken, which prevented the door from closing by itself.

On the same day, but after Cherry's inspection, Leshner also inspected the refrigerator and, without notice to the defense, took the door closing mechanism apart. The disassembled door parts remain in the possession of plaintiff's counsel. Leshner now

attempts to opine that the broken cam could have contributed to the door closing with great force, and that the cam riser was defectively designed. Leshner concedes that there is no way of determining whether the cam was broken before or after plaintiff's injury.

Defendant has filed a motion in limine to exclude the testimony of Ervin Leshner on the grounds that he is not qualified to testify as an expert and that his testimony is not based on adequate scientific methods. Defendant also filed a motion to dismiss or in the alternative for sanctions based on plaintiff's spoilation of evidence.

## II. Discussion - Expert Testimony

### A. The Function of the Court

■■ One of the functions of a district court judge is to rule on preliminary questions of admissibility, including the qualifications of a person to be a witness. FED. R. EVID. 104(a). The Supreme Court has generally required the district court to act as "gatekeeper" and to assure that the technique, procedure, and methodology upon which an expert opinion is founded is reliable, i.e., that the expert's conclusion is based on good grounds (the sound methods and principles of science, for example). *See, e.g., Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). In this case, the determination that the Court must make is whether Leshner may be permitted to testify as an expert witness. Expert testimony is addressed by RULE 702 of the FEDERAL RULES OF EVIDENCE, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This rule has been interpreted as having three major requirements: (1) the witness must be an expert; (2) the procedures and methods used must be reliable; and (3) the testimony must "fit" the factual dispute at issue so that it will assist the jury. *See Daubert,* 509 U.S. at 591; *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985).

## 1. The Witness Must Be an Expert

■ The first requirement of RULE 702, that a witness proffered to testify to specialized knowledge must be an expert, has been interpreted liberally by the courts. *See In re Paoli R.R. Yard PCB Litig. [ Paoli I ]*, 916 F.2d 829, 855 (3d Cir. 1990). A broad range of knowledge, skills, and training may qualify an expert as such. *Id.* The Court of Appeals for the Third Circuit has eschewed imposing overly rigorous requirements of expertise and has been satisfied with more generalized qualifications.[1] While a witness may satisfy the minimum requirements to qualify as an expert, her level of expertise may nevertheless affect the reliability of the expert's opinion. *In re Paoli R.R. Yard PCB Litig. [Paoli II]*, 35 F.3d 717, 741 (3d Cir. 1994).

## 2. The Procedure, Method, and Technique Used Must Be Reliable

■ The second requirement of RULE 702 is that the expert must testify to "scientific, technical or other specialized knowledge [that] will assist the trier of fact." FED. R. EVID. 702. The Supreme Court in Daubert agreed with the Third Circuit's basic holding in Downing that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable. *See Daubert*, 509 U.S. at 592.[2] Under the RULES OF EVIDENCE,

---

[1] *See Hammond v. International Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982) (holding that an engineer, whose only qualifications were sales experience in the field of automotive and agricultural equipment and teaching high school automobile repair, nevertheless could testify in a products liability action involving tractors); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979) (holding that an expert could testify that unguarded elevator buttons constituted a design defect despite expert's lack of specific background in design and manufacture of elevators).

[2] *Daubert* suggests several factors that a district court should take into account in evaluating whether a particular scientific methodology is reliable (i.e. scientifically valid), including the testability of the expert's hypothesis ("whether it can be (and has been) tested"), *Daubert*, 509 U.S. at 593, whether the methodology has been subjected to peer review and publication, the frequency by which the methodology leads to erroneous results, the existence and maintenance of standards controlling the technique's operation, and whether the methodology has been generally accepted in the scientific community. *Id.* at 592-94. The Third Circuit Court of Appeals listed very similar factors a district court should consider in *Downing. See Downing*, 753 F.2d at 1238-39. *Daubert* cites two factors not listed in *Downing* — whether a method produces testable hypotheses and the existence of standards controlling the technique's operation; and *Daubert* leaves off its list several factors listed in *Downing* — the degree to which the expert testifying is

the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Downing*, 753 F.2d at 1237.

### 3. The Opinion Must Fit the Facts and Assist the Jury

In addition to reliability, Rule 702 requires that the expert's testimony must assist the trier of fact. Admissibility depends in part on "the proffered connection between the . . . research or test result to be presented and particular disputed factual issues in the case." *Downing*, 753 F.2d at 1237. In *Downing*, the Court of Appeals recognized that expert testimony was only helpful to the trier of fact if it addressed factual issues implicated by the facts of the particular case. *See Daubert*, 509 U.S. at 591-95 (explicitly adopting the "fit" requirement of *Downing*).

### B. The Parties' Burdens

■ Admissibility under Rule 702 is governed by Rule 104(a), which requires the judge to conduct preliminary factfinding to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," and thus enables the judge to exclude evidence presented in plaintiffs' prima facie case. *Daubert*, 509 U.S. at 592-93. A party who wants to introduce expert testimony bears the burden of showing that a technique is reliable by more than a prima facie showing. *Paoli II*, 35 F.3d at 743; *Downing*, 753 F.2d at 1240 n.21 ("it is plain that the proponent must make more than a prima facie showing . . . that a technique is reliable.").

■ *Daubert* teaches that a judge should find an expert opinion reliable under Rule 702 if it is based on "good grounds," i.e., if it is based on reliable and replicable methods and procedures. A judge may find that an expert has good grounds to hold his or her opinion even though the judge thinks that the opinion is incorrect. *Paoli II*, 35 F.3d at 744. The Supreme Court stated that "the focus

---

qualified, the relationship of a technique to "more established modes of scientific analysis," and the "non-judicial uses to which the scientific technique are put." *Downing*, 753 F.2d at 1238-39; *see Daubert*, 509 U.S. at 592-94. A district court should take into account all of the factors listed by either *Daubert* or *Downing* as well as any others that are relevant. *Paoli II*, 35 F.3d at 742.

. . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The primary limitation on the judge's admissibility determination is that the judge should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process that renders the expert's conclusions incorrect. The judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions. *Paoli II*, 35 F.3d at 746.

## C. *Ervin Leshner*

### 1. Leshner Can Be Qualified As an Expert

■ As the Court has already discussed, the standard for a witness qualifying as an expert is a liberal one. Leshner has a long and impressive background in the field of engineering. He has qualified as an expert witness in the field of mechanical engineering and product safety design in over twenty-five different cases. He has professional affiliations with nine engineering societies. Plaintiff asserts that Leshner is qualified to testify about general engineering principles, and the Court agrees with that proposition.

Defendant contends that Leshner should not be allowed to testify because plaintiff has not shown Leshner to have demonstrated any expertise in the design or manufacture of household refrigerators. The Court does not read RULE 702 as narrowly as does defendant. While Leshner may not have been employed with GE or any other refrigerator manufacturing company, such specific expertise is not required by RULE 702. A broad range of knowledge, skills, and training may qualify an expert as such. *See Paoli I*, 916 F.2d at 855. Leshner's knowledge may not be as specialized as that of defendant's expert, but it is sufficient to allow him to be qualified as an expert. Defendant's contention that Leshner lacks specific knowledge of household refrigerators in general and has no experience with the Monogram refrigerator involved in this case has more pertinence to the second and third questions governing the admittance of expert testimony: (1) whether the methods used by Leshner to arrive at his opinions were reliable; and (2) the broader issue of whether his opinion will prove helpful.

## 2. Leshner's Methods and Procedures Are Totally Unreliable

■ The second issue the Court must examine is whether Leshner used reliable and replicable methods and techniques in reaching his conclusions. The plaintiff bears the burden of showing by a preponderance of the evidence that his methods are reliable. She has utterly failed to meet her burden. Mr. Leshner failed to use any identifiable method or technique in arriving at his conclusions, which renders his opinions without sufficient reliability to be presented to a jury.

The first opinion Leshner provided was a report dated December 11, 1996. Leshner admitted, however, that his report was based solely on a letter received from plaintiff's counsel dated December 1, 1996. (Transcript ["Tr."] of Ervin Leshner Deposition, Mar. 8, 1997, at 19-20). Leshner had never spoken to the plaintiff about how the accident occurred. (Tr. at 20). He had read no depositions, had not seen the refrigerator in question, and had no information how the refrigerator had been installed. (Tr. at 37). Plaintiff's witness could not even state with any certainty whether he had ever seen any Monogram refrigerator before he wrote his report. (Tr. at 49-50). There is no evidence in the record to show that Leshner used any reliable method whatsoever, scientific or otherwise, in fabricating his report of December 11, 1996.

In regard to the "testing" performed by Leshner on March 7, 1997, again, plaintiff's expert failed to use reliable methods or techniques. The most striking testimony he gave during his deposition regarding this so-called testing was that the refrigerator door, when heavily loaded, could close with sufficient force to crush a carrot.[3] Most significantly, and contradictorily, Leshner's own notes jotted down that day state that the door would not swing shut by itself! He also admitted that the door could only be closed by the application of sufficient external force, i.e., by pushing it closed. (Tr. at 59-60). Despite his acknowledgment that the refrigerator door had to be pushed closed manually because it

---

[3] Leshner testified that the broken cam riser mechanism, which, when intact, would allow the door to close by itself, likely contributed to the door closing with great force. He also conceded that on March 7, 1997, when he reached this conclusion, the door would not close by itself, due in part to the broken cam riser.

would not close by itself, Leshner would opine to the jury that, in July of 1992, the refrigerator door closed by itself on plaintiff's thumb with enough force to crush her thumb. If there is any method in this madness, the Court cannot find it.

In regard to the theory that a dangerous pinch-point was created, Mr. Leshner's opinion is similarly devoid of any reliable, factual bases. Leshner admitted that he never measured the distance between the two doors. (Tr. at 32). He could not even state that he had ever examined the GE Monogram model refrigerator at issue here, although he had examined other "similar design[s]" of refrigerators not manufactured by GE. This testimony lacks any reliable methodology to support it. Accordingly, Leshner's opinion testimony on the pinch-point issue also must be excluded.

### 3. Leshner's Opinion Does Not Help the Trier of Fact

In addition to the lack of reliable procedure or methodology used by Leshner in coming to his conclusions about the door's ability to close by itself, his test and opinion based on that test have nothing to do with plaintiff's claim that the door closed by itself on her thumb. Other than assuming the truth of representations made in the initial letter from plaintiff's counsel, the only procedure used by Leshner in testing was to see if the door would crush a carrot when force was used to push it shut. There is no fit between his technique and the facts of this case. Neither party has alleged that any external force was applied to the door in July of 1992. Therefore, the one "test" Leshner did perform is not helpful to the jury under Rule 702. Accordingly, Leshner's testimony about crushing the carrot must be excluded.

In sum, Mr. Leshner's methods for arriving at his opinions do not meet any of the reliability standards of the cases interpreting Rule 702 because he used no noticeable method or reliable procedure in arriving at his opinions. Moreover, Leshner's opinions, both in his report of December 11, 1996, and as a result of his inspection on March 7, 1997, also would be excluded under Rule 403. The opinions are so unreliable, speculative, and unrelated to the facts of this case that they must be excluded on grounds of undue prejudice, confusion of the issues, and likelihood of misleading the jury.

## III. Conclusion

The Court's role is to act as a gatekeeper: to admit evidence which may be helpful to the jury and to keep out evidence which would only serve to confuse or mislead the jury. The Court has found that the testimony of plaintiff's expert is of the latter type. It is difficult for the Court to analyze the procedures, techniques, and methods of plaintiff's expert, as they are essentially non-existent. Plaintiff's proposed expert, Ervin Leshner, did no research of any kind whatsoever in preparing his report of December 11, 1996, other than reading a letter from plaintiff's counsel written December 1, 1996. The March 7, 1997 testing had even less factual and procedural basis. All observable evidence pointed to a conclusion that the door would not close, and yet an irrelevant test in which Mr. Leshner externally forced the door closed was enough to cause him to opine that defendant is liable to plaintiff. The Court could discover no reliable method, technique, or procedure behind his opinions, which are more accurately termed "speculations."

Accordingly, the Court has granted defendant's motion to exclude Ervin Leshner's testimony. See Order dated September 5, 1997. Defendant's motion to dismiss or in the alternative for sanctions due to spoilation was denied because that motion largely relates to the same issues addressed and remedied by striking Mr. Leshner's testimony.

ENTERED this 20th day of October, 1997.