**IN RE: CATALYST LITIGATION**
**JOHN BULLY, Plaintiff**
v.
**HESS OIL VIRGIN ISLANDS CORP., et al., Defendants**
**ALEXANDER EMILE, Plaintiff**
v.
**HESS OIL VIRGIN ISLANDS CORP., et al., Defendants**
**JULIEN McSWEEN, Plaintiff**
v.
**HESS OIL VIRGIN ISLANDS CORP., et al., Defendants**
**RICHARD MAXWELL, Plaintiff**
v.
**HESS OIL VIRGIN ISLANDS CORP., et al., Defendants**

Master Docket No. SX-05-CV-799, Individual Docket Nos. SX-05-CV-812, SX-05-CV-806, SX-05-CV-847, SX-05-CV-846

Superior Court of the Virgin Islands

Division of St. Croix

July 2, 2010

6

THOMAS ALKON, ESQ., Law Offices of Thomas Alkon, Christainsted, USVI, *Attorney for Plaintiffs*.

GORDON C. RHEA, ESQ., JERRY HUDSON EVANS, ESQ., Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, S.C., *Attorneys for Plaintiffs.*

BRITAIN H. BRYANT, ESQ., Bryan Barnes Beckstedt & Blair, LLP, Christiansted, USVI, *Attorney for Defendant Hess Corporation.*

JAMES CRAWFORD ORR, ESQ., CAROLYN O'CONNOR ESQ., Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, N.J., *Attorney for Defendant Hess Oil Virgin Islands Corp.*

WILLOCKS, *Judge*

## MEMORANDUM OPINION

(July 2, 2010)

Defendant Hess Oil Virgin Islands Corporation (Hovic) is a corporation is owned and operated an oil refinery from 1965 to 1998 on St. Croix, Virgin Islands of the United States. Hovic was a wholly-owned subsidiary of Defendant Amerada Hess Corporation (now Hess Corporation) from 1965 to 1998. During that period of time, Defendant Hovic purchased or leased catalyst from various manufacturers for use in the oil refining process.

Plaintiffs, John Bully, Alexander Emile, Richard Maxwell, and Julien McSween were employees of contractors such as Litwin, Riggers and Erectors, and Virgin Islands Industrial Maintenance Corporations, all of whom Defendant Hovic retained to conduct catalyst work at the Refinery. Plaintiffs claim that as a result of these exposures to catalyst they developed mixed dust pneumoconiosis.

Plaintiff John Bully loaded and unloaded catalyst in the Platformer units, Desulfurization units, and Sulfer and Beavon Units. He also swept up spilled catalyst and entered the reactors to level catalyst and chip spent catalyst. It is estimated that he worked with catalyst on over 50 occasions from 1974 through the early part of 1990s.

Plaintiff Alexander Emile worked with catalyst from 1989 through 1994. He chipped spent catalyst in many of the Desulfurization units and cleaned out the inside of reactors.

Plaintiff Richard Maxwell loaded and unloaded catalyst and went inside reactors in the Platformer and Desulfurization units from the early 1970s to around 1995.

8

Plaintiff Julien McSween worked with catalyst from 1988 to around 1995. He opened fresh catalyst and swept and shoveled up catalyst spills. After the unloading of the catalyst, he sealed up the drums of spent catalyst.

Defendant Hovic and Defendant Hess have challenged the admissibility of the testimony of the Plaintiffs' expert Dr. Martin B. Barrie Ph.D. and have requested a *Daubert* Hearing, pursuant to *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).[1]

---

[1] Initially, the Defendant had moved to preclude the testimony of Dr. Barrie for the reason listed infra. However, after the Plaintiffs proffered what the testimony of Dr. Barrie will be, the opposition to Dr. Barrie's testimony was reduced to the arguments listed supra.

(1) Dr. Barrie should be precluded from proffering any opinions on the issue of specific causation.

(2) Dr. Barrie should be precluded from offering certain opinions on the issue of general causation.

(3) Dr. Barrie should be precluded from proffering any of his catalyst manufacturer opinions against Hess and Hovic.

(4) Dr. Barrie should be prohibited from testifying on matters about which he has no qualifications knowledge, skill, experience, training, or education.

(5) Dr. Barrie "opinions have" no bases or unsound bases and should be excluded as net opinions.

(6) Dr. Barrie Mythology is not scientifically reliable and his testimony does not "fit" the evidence of the cases and therefore his opinion should be excluded.

(7) Dr. Barrie state of the art and cancer risk opinions are not relevant to and will not assist the trier of fact in assessing, Plaintiffs, alleged exposures and therefore should be excluded.

(8) Dr. Barrie's testimony suggesting that Hess Oil Virgin Islands Corp. is a manufacturer of spent catalyst should be precluded.

   a) Barrie's suggestion that Hovic is a Manufacturer of spent catalyst does not meet the "fit" reliability requirements under Rule 702 and therefore such testimony should be excluded.

   b) Barrie suggestion that Hovic is a manufacturer of spent catalyst has no and/or an unsound basis and should be Excluded as a Net Opinion.

   c) Pursuant to FED. R. EVID. 704(a), Barrie should be Precluded from providing "opinions" on issue of law.

(9) Even if otherwise admissible, Barrie's testimony should be excluded as its probative value is not substantially outweighed by its prejudicial effect under FED. R. EVID. 403.

(10) Dr. Barrie's Opinion Should be excluded to the extent they are based upon opinions and conclusions of Dr. Teitelbaum, which are also inadmissable.

9

Defendants have moved to exclude the testimony of Dr. Barrie. Plaintiffs have submitted an opposition paper in this instant case.

At the onset of this case, there was some confusion as to the testimony of Dr. Barries and thus as to what areas of expertise Dr. Barrie shall opine upon. At the *Daubert* Hearing, Counsel for the Plaintiffs, Attorney Jerry Evans, clarified the areas that Dr. Barrie will be testifying. According to Attorney Evans, Dr. Barrie will testify on two main subject areas. The first area is that of Industrial Hygiene. The Plaintiffs have proffered that Dr. Barrie will give his opinion that "Hess and Hovic failed in their duties to as in a reasonably prudent manner to timely and effectively implement improved industrial hygiene practices" in relations to handling the catalyst. (See Transcript of May 11-12, 2010 *Daubert* Hearing at 5:6) The second part of Dr. Barrie's testimony will be as to the "lung injuries sustained by the Plaintiffs, as described by Dr. Teitelbaum, are consistent with and supported by the epidemiologic evidence." *Id.*

The Parties entered into a stipulation to limit the testimony of Dr. Barrie without the waiver of Defense to challenge and preclude the testimony of Dr. Barrie.

This stipulation is as follows:

Dr. Barrie will not offer any opinion on general causation.

Dr. Barrie will not offer any opinions on specific causation.

Dr. Barrie will not offer against Defendant Hovic and/or Defendant Hess any opinions related to the conduct of catalyst manufacturers, and will not characterize Defendant Hovic and/or Defendant Hess as a manufacturer of either fresh or spent catalyst.

Dr. Barrie will not offer any opinion regarding cancer risk assessment.

Dr. Barrie will not offer any opinions suggesting an association between asbestos and/or silica and mixed dust pneumoconiosis. (see Consent Order dated May 24, 2010.)

After the issues have been sorted out, Defendants challenge the methodology used by Dr. Barrie in arriving at his opinion on the issue of

---

(11)   Based upon the required exclusion of Barrie's testimony Defendants are entitled to summary judgment as a matter of law.

industrial hygiene and his epidemiological opinion. Defendants have also challenged the qualifications of Dr. Barrie as an industrial hygienist and an epidemiologist. Defendants specifically challenge Dr. Barrie's opinion in that:

Dr. Barrie is unqualified to render any of his opinion in these matters.[2]

Dr. Barrie provides either no or unsound bases for his opinions, rendering his opinions "net opinions."

In rendering his opinion, Barrie relies on information that does not "fit" the facts of this case.

Dr. Barrie's opinion should be excluded to the extent that they are based upon the opinions of Dr. Tietelbaum, which are also inadmissible.

At the *Daubert* Hearing, Plaintiffs called their expert witness, Dr. Martin Barrie, Ph.D. Defendants countered with their experts, Mr. John Henshaw and Dr. Brent Kerger.

■ The Federal Rules of Evidence has entrusted the trial court with the task of being the gatekeeper "to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) and *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 at 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

■ For admissibility, such evidence must satisfy the three major requirements set forth in Rule 702 of the Federal Rules of Evidence.[3] These major requirements are: (1) the proffered expert must be qualified;

---

[2] At the time of this challenge, it was assumed that Dr. Barrie would be offering his opinion on general and specific causation as well as several others. Hence, it is unclear as to whether the qualification challenge went to those areas. Nevertheless, the Court will make a determination as to the qualification of Dr. Barrie in terms of his opinions.

[3] Rule 702 of the Federal Rules of Evidence states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

11

(2) the expert must give an opinion "about matters requiring scientific technical, or specialized knowledge" which is obtained or derived from a reliable process or technique; and (3) the expert's testimony must "assist the trier of fact," in other words, it must "fit" the facts of the case. *Pineda*, 520 F. 3d at 244; *In Re Paoli R.R. Yard PCB Litig. [Paoli II]*, 35 F. 3d 717, 741-43 (3d Cir. 1994).

■ The Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (noting that Federal Rule of Evidence 702 was amended to include this trilogy and referring to *Brown v. Southeastern Pa. Transp. Auth. (Paoli II)*, 35 F.3d 717 at 741-743 (3d Cir. 1994) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

### Whether Dr. Martin Barrie is Qualified as an Expert

■ To meet the qualifications test, an expert must "possess specialized expertise." *Schneider ex rel. Estate of Schneider*, 320 F.3d at 404. Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials."

■ The Courts have interpreted the specialized knowledge requirement liberally and have stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." In other words, in satisfying the qualification prong, the Courts have used a liberal policy of admissibility illustrated by Rule 702, "a broad range of knowledge, skills, and training qualify an expert." *Paoli II*, 35 F.3d at 741-742; *Hammond v. International Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979). *See also, Schneider*, 320 F.3d at 404 (citing *Paoli II*, 35 F.3d at 741-743 (citing *Daubert*, 509 U.S. at 579, 113 S. Ct 2786, 125 L. Ed. 2d 469 (1993); *Belofsky v. General Electric Co.*, 37 V.I. 334, 980 F. Supp. 818 (D.V.I. 1997) (citing *Hammond v. International Harvester* Co., 691 F.2d 646, 652-53 (3d Cir. 1982)).

■ The Court in *Paoli II* held that:

"We have held that a broad range of knowledge, skills, and training qualify an expert as such," and have "eschewed imposing overly rig-

12

orous requirements of expertise." *Id.*; *see also Hammond v. International Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982) (permitting engineer with sales experience in automotive and agricultural equipment, who also taught high school automobile repair, to testify in products liability action involving tractors). *Paoli II*, 35 F.3d at 741.

■ The Courts has eschewed imposing overly rigorous requirements of expertise and has been satisfied with more generalized qualifications. While a witness may satisfy the minimum requirements to qualify as an expert, her level of expertise may nevertheless affect the reliability of the expert's opinion. *Paoli II*, 35 F.3d at 741 (3d Cir. 1994).

■ There is no articulated test, or set of standards, for determining the qualification of a witness as an expert. This determination is left to the discretion of the trial judge. *Government v. Olivera*, 8 V.I. 602, 606 (D.V.I. 1971). "All that is necessary is that the witness has some special or technical knowledge and experience so that he may enlighten laymen (judge and jury) in an area beyond their competence and comprehension." *Id.* Factors to be used in determining expertise qualifications include: education, practical experience, study, research, and general background. *Id.*

■ Dr. Barrie obtained his Bachelor of Science Degree in 1978 in the field of resource development. He received his Masters of Science Degree in environmental science, specializing in industrial hygiene and genetic toxicology. In 1987, he acquired his Jurisdoctorate and in 2003, he obtained his Ph.D. specializing in epidemiology, the environmental sciences exposure risk assessment policies. He is currently vice-president of Middle East Operation for a consulting and service company called Caliche Ltd.

■ The Court finds that Dr. Barrie has overcome the qualification threshold and is an expert industrial hygienist and an epidemiologist. This Court needs not find him to be the best qualified or his specialization to be the most appropriate. *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996).

### Whether the Testimony of Dr. Martin Barrie M.D. Meets Rule 702 of the Federal Rules of Evidence in that the Process or Technique Used in Formulating His Opinion is Reliable.

■ Pursuant to Rule 702 of the Federal Rule of Evidence, the Court must determine whether "the process or technique the expert used in

13

formulating the opinion is reliable." *Paoli II*, 35 F.3d at 742. The Supreme Court in *Daubert* agreed with the Third Circuit's basic holding in *Downing* that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable. *See Daubert*, 509 U.S. at 592. Under the Rules of Evidence, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir. 1985).

In reaching that decision of reliability, the Court must consider several factors: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *See Pineda*, 520 F.3d at 247-248, 47 V.I. at 127; *Byers*, 35 V.I. at 246, 941 F. Supp. at 516.

This list is non-exclusive and each factor need not be applied in every case. *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct 1167 (1999). In creating these standards, the *Daubert* Court required trial courts to consider the above factors in their totality. *Daubert*, 509 U.S. at 593. No one factor is dispositive.

As such, the Court's inquiry must focus solely on principles and methodology, not on the conclusions generated therefrom. *Daubert*, 509 U.S. at 595. As stated by the Court in *Turbe v. Lynch Trucking*, 41 V.I. 146, (1998):

> These factors should not, however, obscure the fact that the Court's gatekeeper role is a flexible one. The factors are simple useful signposts, not dispositive hurdles that a party must overcome in order to have an expert testimony admitted. *Daubert*, 509 U.S. at 594.

The Third Circuit Court of Appeals has explained that an expert opinion cannot be speculative: "Situations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as 'possibility.' " *Schulz v. Celotex Corp.*, 942 F.2d 204, 208 (3d Cir. 1991) (discussing level of certainty required for expert medical opinions); *see also Holbrook*

80 F.3d at 784 ("A determination that the expert has good grounds assures that the expert's opinions are based on science rather than 'subjective belief or unsupported speculation.") (quoting *Daubert*).

██ Admissibility under Rule 702 is governed by Rule 104(a), which requires the judge to conduct preliminary fact finding to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," and thus enables the judge to exclude evidence presented in the plaintiffs' prima facie case. *Daubert*, 509 U.S. at 592-93. A party who wants to introduce expert testimony bears the burden of showing that a technique is reliable by more than a prima facie showing. *Paoli II*, 35 F.3d at 743; *Downing*, 753 F.2d at 1240 n.21 ("it is plain that the proponent must make more than a prima facie showing . . . that a technique is reliable.").

Essentially, Defendants argue that Dr. Barrie's methodology is flawed. To wit, the Defendants argue that:

> Dr. Barrie in appropriately selected one personal sample from a process engineer who performed totally different tasks than a contract maintenance employee.

> Dr. Barrie based his assessment on one data point that was higher than all others.

> Dr. Barrie failed to evaluate the validity of and conditions under which the sample was collected.

> Dr. Barrie failed to acknowledge and take into account a transcription error in the analyst's calculations, which significantly altered the actual sample result.

> Dr. Barrie failed to consider the other samples that were available to him.

> Dr. Barrie used an inappropriate estimation of the duration of catalyst exposure to contract maintenance employees during reactor turn-around events.

> Dr. Barrie provided a misleading representation of the OELs.

██ Many of the issues raised are a question of weight, not admissibility. *Floorgraphic, Inc. v. News America Marketing In-Store*

15

*Service, Inc.*, 546 F. Supp. 2d 155, 169 (D.N.J. 2008). In addition, as stated above, where experts differ on issues, that is a matter for the trier of fact to decide.

Defendants also claim that Dr. Barrie failed to utilized recognized and scientifically reliable methodologies in relation to the limited remaining purported opinions on "general causation" and "industrial hygiene" and his "opinions" therefore should be excluded.

However, at the *Daubert* Hearing, Defendants' expert witness stated: "Well, I looked at or I tried to compare — methodology is changing. The science is changing as we learn every day." (See Transcript of May 11-12, 2010 *Daubert* Hearing at 91) According to Mr. Henshaw, the appropriate methodology is: "Gather data; Understand the population you are looking at (the exposure group); Then compare to what the Occupational Exposure Level (OLE) is." Mr. Henshaw concedes that exposure limits were in Dr. Barries report (See Transcript of May 11-12, 2010 *Daubert* Hearing at 97:8). However, he states that there is some confusion of the terms. *Id.* In addition, Mr. Henshaw argues that Dr. Barrie did not use the best "strategy, the methodology we would use." *Id.*

■ Dr. Barrie reviewed the appropriate literature, Plaintiffs' deposition to determine the personal protective equipment, the training they received, the medical treatment they received, and what they did on a daily basis. Dr. Barrie also reviewed the deposition of refinery personnel and management and reviewed the industrial hygiene and safety programs that were implemented. (See Transcript of May 11-12, 2010 *Daubert* Hearing at 20:10-24:9).

■ Hence, the Court finds that the methodology used by Dr. Barrie though not perfect was based on good grounds and therefore reliable. "The grounds for the expert's opinion merely have to be good; they do not have to be perfect." *Paoli*, 35 F.3d at 744. *Daubert* teaches that a judge should find an expert opinion reliable under Rule 702 if it is based on "good grounds," *i.e.*, if it is based on reliable and replicable methods and procedures. A judge may find that an expert has good grounds to hold his or her opinion even though the judge thinks that the opinion is incorrect. *Paoli II*, 35 F.3d at 744. The Supreme Court stated that "the focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

■ Scientific evidence is deemed sufficiently reliable if the expert has "good grounds" for his or her testimony, *i.e.*, the expert's opinions are

16

"based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.' " *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 113 S. Ct. at 2795). We have cautioned, however, against applying the reliability requirement too strictly, explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence. The ultimate touchstone [of admissibility] is helpfulness to the trier of fact." *Id.* at 744 (internal quotations and citation omitted).

The primary limitation on the judge's admissibility determination is that the judge should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process that renders the expert's conclusions incorrect. As the Supreme Court has instructed, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Defendants further argue that Dr. Barrie did not provide a sound basis for the limited remaining purported opinions on "state of knowledge" and "industrial hygiene." The Court in *Paoli II* held that the Court should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions. *Paoli II*, 35 F.3d at 746.

This is not the case where an expert offers opinion completely devoid of any factual basis. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 754-756 (3d Cir. 2000). Dr. Barrie did not engage in unsupported speculation. *See Daubert* 509 U.S. at 590. Rather the Court finds that his conclusions were based on good grounds. "An expert's opinion is reliable if it is 'based on the methods and procedures of science' rather man on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 589).

As with Dr. Teitelbaum's Opinion, a person can argue that Dr. Barrie's Opinion is based on shaky factual assumptions. However, the "grounds for the expert's opinion merely have to be good; they do not have to be perfect." *Paoli II*, 35 F.3d at 744.

As stated before, the Supreme Court has instructed: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

17

means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In *Daubert*, the Supreme Court held that a District Court, when presented with a proffer of expert "scientific" testimony, must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," by considering all relevant factors that may bear on the reliability of the proffered evidence. 113 S. Ct. at 2796-97; *Paoli II*, 35 F.3d at 742.

The Court has reviewed all the arguments, voluminous record, relevant information and cases and finds that Dr. Barrie passes the meets the requirements of Rule 702 of the Federal Rules of Evidence and the standards enunciated by the Supreme Court in *Daubert*.

## The Testimonies of Mr. John Henshaw and Dr. Brent Kerger

Defendants called two expert witnesses at the *Daubert* Hearing, Mr. John Henshaw and Dr. Brent Kerger. Both expert witnesses for the defense found that the methodology used by Dr. Barrie was flawed and unreliable.

██ ██ However, Courts have held that the fact that experts have differing opinions is a matter for the jury. In this matter, both experts disagree as to the conclusions and appropriate method used. After review of the documents and listening to the testimony, this Court finds that the difference in the opinions of the experts is a matter left to the jury. The Court in *Johnson v. Vane Line Bunkering*, 2003 U.S. Dist. LEXIS 23698, at *18 n.3 (E.D. Pa. Dec. 30, 2003) has held:

> If disagreements on particular points between proposed experts and others in their field were a proper basis for questioning the reliability and relevance of the methods employed by the experts, it is likely that very few expert opinions would be admissible in trial. *Johnson v. Vane Line Bunkering, Inc.*, 2003 U.S. Dist. LEXIS 23698, at *18 n.3 (E.D. Pa. Dec. 30, 2003)

## Whether the Testimony of Dr. Barrie Fits the Facts of the Case

██ The third requirement of Rule 702 of the Federal Rules of Evidence is to ensure that the evidence is relevant or "fits" under the facts of the case. *Daubert*, 113 S. Ct. at 2795-96. There must be a valid connection between the expertise in question and the inquiry being made in the case. *Paoli II*, 35 F.3d at 743. When dealing with "scientific"

18

evidence, this element is satisfied if there is a "connection between the scientific research or test result to be presented, and particular disputed factual issues in the case." *Downing*, 753 F.2d at 1237; *see also Paoli II*, 35 F.3d at 742-43.

In addition, FED. R. EVID. 702 requires that the expert's testimony must assist the trier of fact In *Downing*, the Court of Appeals recognized that expert testimony was only helpful to the trier of fact if it addressed factual issues implicated by the facts of the particular case. *See Daubert*, 509 U.S. at 591-95 [980 F. Supp. at 822] (explicitly adopting the "fit" requirement of *Downing*).

The Court after reviewing the reports, transcripts and testimony and other related documents find that the testimony of Dr. Barrie will assist the trier of facts and therefore "fits" the facts of the case. Hence, Dr. Barrie has passed the third hurdle of the trilogy.

## CONCLUSION

The Court decision to deny Defendants' Motion to Exclude the testimony of Dr. Barrie was a difficult one. This is primarily because of the excellent credentials of the Parties' expert witnesses. Although the Court is convinced that is has correctly assessed the admissibility of Plaintiffs' expert witnesses, after listening to the Plaintiffs' and Defendants' expert witnesses, reviewing the presence or absence of scientific literature and most importantly, the process itself, which was guided by very able and competent attorneys, the Court must concede, the decision was not an easy one. Both sides were very competent and vigorously defended their positions.

Nevertheless, the Court will deny Defendants' Motion in *Limine* to Exclude the Testimony of Dr. Martin Barrie, M.D.