IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
September 26, 2022 03:21 PM
ST-2018-CR-00037
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | **CASE NO. ST-2018-CR-00037** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **TREVORNE LAKE,** | ) | |
| | ) | Cite as **2022 VI Super 82** |
| Defendant. | ) | |
| _____ | ) | |

**H. TIMOTHY PERRY, Esq.**
Virgin Islands Department of Justice
GERS Building, 2nd Floor
34-38 Kronprindsens Gade
St. Thomas, Virgin Islands 00802
*Attorney for Plaintiff*

**SAMUEL JOSEPH, Esq.**
**MARY ANN MATNEY, Esq.**
Office of the Territorial Public Defender
P.O. Box 6040
St. Thomas, Virgin Islands 00804
*Attorneys for Defendant*

**MACKAY, KATHLEEN**, Judge

## MEMORANDUM OPINION

¶1 **THIS MATTER** is before the Court on a Motion *in Limine* to Exclude Cellular Location Data and Demand for *Daubert* Hearing,[1] filed by Defendant Trevorne Lake ("Lake" or "Defendant") on February 4, 2022.[2] The People of the Virgin Islands ("People") filed an

---

[1] A "*Daubert* hearing" refers to a well-settled standard used to determine the admissibility of expert testimony pursuant to Federal Rule of Evidence ("F.R.E.") 702, established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and officially adopted by the Virgin Islands Supreme Court in *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400 (V.I. 2016) (holding the "*Daubert* standard should govern the admission of expert testimony in the Virgin Islands").

[2] Attached to his motion, Lake filed one exhibit: Exhibit A, FBI Cellular Analysis Survey Team Report on Trevorne Lake's cell phone for May 16, 2017.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 2 of 20

Cite as 2022 VI Super 82

Opposition to Defendant's Motion to Exclude Cellular Location data on April 18, 2022.[3] For the reasons discussed herein, Defendant's motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     The People allege Lake committed a murder on May 16, 2017, at 1:13pm in a highly trafficked area of Smith Bay in St. Thomas, U.S. Virgin Islands. The Court will provide a brief overview of the timeline for discovery and other filings in this matter, as pertinent to the instant motion. On February 25, 2019, the Defendant filed a notice of alibi, indicating that Lake was with a female in Bovoni, St. Thomas, U.S. Virgin Islands at the time of the alleged murder. On August 28, 2018,[4] and again on September 12, 2019,[5] the People provided Defendant with AT&T cell phone records associated with Defendant's cell phone on the date of the murder. Thereafter, in February 2020, the People purportedly submitted the cell phone records to the Federal Bureau of Investigation ("FBI")'s Cellular Analysis Survey Team ("CAST") and Supervisory Special Agent Matthew Carman ("SSA Carman")[6] performed an analysis and created his CAST report. On April 16, 2020, the People filed a Notice of Witness Testimony, providing Defendant with SSA Carman's CAST report and indicating they intend to call SSA Carman as an expert witness at trial. On September 14, 2021, Defendant filed a supplemental discovery request, seeking reports

---

[3] Attached to their opposition, the People filed two exhibits: Exhibit 1, Curriculum Vitae of Supervisory Special Agent Matthew Carman, and Exhibit 2, FBI Cellular Analysis Survey Team Report on Trevorne Lake's cell phone for May 16, 2017.

[4] The People's First Supplemental Discovery, filed August 18, 2018, states it produced "AT&T Telephone Records dated 6/16/2017 (16 pages)."

[5] The People's Fourth Supplemental Discovery, filed September 12, 2019, states it produced "Cell Phone Records (xxx-xxx-xxxx) containing ATT Records Key, and 2x Report AU_2273592 (PDF and Text documents), Photographs/Map of geo-location of murder scene, ATT TOWER DATA Report AU 2758529 (PDF and Text documents), Detail Records Report, and Phone Summary Report." (The court has redacted the cell phone number that is identified in the discovery).

[6] Both parties refer to this expert witness as "Carmen," but the witness's C.V. spells his name as "Carman." Therefore, the Court will use the witness's own spelling of his name.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 3 of 20

Cite as 2022 VI Super 82

pertinent to the cellular location data, among other requests. On January 11, 2022, the People responded to the request, but did not include any new attachments.

¶3      Pursuant to Virgin Islands Rules of Evidence ("V.I.R.E.") 403 and 702, Lake now moves to exclude the cellular location data and SSA Carman's testimony from trial. Lake argues that (1) the expert testimony will not help the trier of fact, but rather will mislead the jury; (2) SSA Carman's testimony will not be based on scientific facts or data and is not the product of reliable methodology; (3) the cellular location data has only "miniscule" probative value, which is outweighed by prejudice to Lake; and (4) a *Daubert* hearing must be ordered for the Court to assess the relevance and reliability of the cellular location data. The People counter with a detailed explanation of SSA Carman's anticipated testimony and an overview of comprehensive legal precedent supporting CAST methodology and cellular location analysis. The People further argue that the cellular location data provided will be relevant, reliable, and probative, thereby satisfying all the *Daubert* requirements and rendering the evidence admissible without need for a *Daubert* hearing. Lake filed no reply to the People's comprehensive briefing.

## DISCUSSION

### A. The Court finds the proffered evidence is relevant and its probative value is not substantially outweighed by prejudice to Lake.

¶4      As a threshold matter, the Court must determine whether the proffered evidence is relevant and sufficiently probative to be admissible at trial, pursuant to the pertinent Virgin Islands Rules of Evidence.

¶5      V.I.R.E. 401 states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 4 of 20

Cite as 2022 VI Super 82

determining the action." V.I. R. EVID. 401.[7] Even if the tendency is minimal, it is enough to satisfy

the requirements for relevance under V.I.R.E. 401. *Thomas v. Virgin Islands*, 60 V.I. 183, 196

(V.I. 2013)[8] (citing *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007)[9]). V.I.R.E. 401

does not require the evidence to be dispositive of a fact in issue; quite the opposite, "the bar is

much lower and simply requires that the existence (or non-existence) of such fact make it more or

less likely." *Ostalaza v. People*, 58 V.I. 531, 563 (V.I. 2013)[10] (citing *People v. Todmann*, 53 V.I.

431, 451 (V.I. 2010) (Swan, J., dissenting)[11, 12]). V.I.R.E. 403 states: "The court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting

time; or needlessly presenting cumulative evidence." V.I. R. EVID. 403.[13] By definition, all

relevant evidence will be prejudicial to one of the parties. *Billu v. People*, 57 V.I. 455, 464 (V.I.

---

[7] In order to interpret V.I.R.E. 401, the Court considers cases decided prior to the adoption of the Virgin Islands Rules of Evidence on March 31, 2017. *In re Adoption of the V.I. Rules of Evidence*, Promulgation No. 2017-02, 2017 V.I. Supreme LEXIS 21 (V.I. Apr. 3, 2017). All of the cases cited in this Section A interpret the F.R.E. The current version of F.R.E. 401 is identical to current V.I.R.E. 401. If a different version of the federal rule was considered by any case cited herein, the Court will note the changes and whether those differences impact interpretation of the rule.

[8] *Thomas v. People of the Virgin Islands* cites to F.R.E. 401. F.R.E. 401 was amended to its current version in 2011, so in 2013, F.R.E. 401 was identical to the current version, and thereby identical to current V.I.R.E. 401.

[9] *United States v. Jordan* cites to F.R.E. 401. In 2007, F.R.E. 401 read as follows: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While technically different from the current version of current V.I.R.E. 401, the Advisory Committee Notes indicate that the amendments to this version, to yield the current version, "are intended to be stylistic only [and] [t]here is no intent to change any result in any ruling on evidence admissibility." *See* FED. R. EVID. 401 advisory committee's notes to 2011 amendment.

[10] *Ostalaza v. People of the Virgin Islands* cites to F.R.E. 401. The 2013 version of F.R.E. 401 is identical to the current F.R.E. 401 and is therefore identical to current V.I.R.E. 401.

[11] *People of the Virgin Islands v. Todmann* cites to F.R.E. 401 as well as V.I. CODE ANN. tit. 5 § 771(2), which at the time was within the Uniform Rules of Evidence applicable to the Virgin Islands. Then applicable 5 V.I.C. § 771(2) defined "relevant evidence" as "evidence having any tendency in reason to prove any material fact." Again, the Court finds this definition to be substantively the same as current V.I.R.E. 401.

[12] Although the reference to 5 V.I.C. § 771(2) is within the dissenting opinion, the only information utilized within the dissent is the language of 5 V.I.C. § 771(2) as it was at the time the case was decided.

[13] As discussed, *supra* at note 7, in order to interpret V.I. R.E. 403, the Court has cited to cases that interpreted F.R.E. 403 prior to the adoption of the Virgin Islands Rules of Evidence. Currently, F.R.E. 403 is identical to current V.I.R.E. 403. As above, if any of the cited cases interpret a previous version of the rule, the Court will note the difference and determine whether the interpretation of the rule is impacted.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 5 of 20

Cite as 2022 VI Super 82

2012)[14] (citing *United States v. Dillon*, 532 F.3d 379, 391 (5th Cir. 2008)[15]). The "term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Mulley v. People*, 51 V.I. 404, 411–12 (V.I. 2009)[16] (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)[17]). Further, unfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable. *Billu*, 57 V.I. at 465 (quoting *Krepps v. Gov't of the V.I.*, 47 V.I. 662, 674 (D.V.I. App. Div. 2006)[18]).

¶6      Lake argues the proffered location data is based on a mere estimation, and any information presented to the jury by SSA Carman, as an expert witness, would lead the jury to believe Lake was definitively located in a specific location at the time of the alleged murder, thereby prejudicing the Defendant. Accordingly, Lake contends the proffered evidence will mislead the jury, such that its "miniscule" probative value is substantially outweighed by unfair prejudice to Lake, in violation of V.I.R.E. 403. The People respond that SSA Carman's testimony will not mislead the jury but

---

[14] *Billu v. People of the Virgin Islands* cites to F.R.E. 403. In 2012, the F.R.E. 403 was identical to current V.I.R.E. 403.

[15] *United States v. Dillon* cites to F.R.E. 403. In 2008, F.R.E. 403 read as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Although technically slightly different from current V.I.R.E. 403, the Court finds the 2008 version of F.R.E. 403 to be substantively identical to the current V.I.R.E. 403.

[16] *Mulley v. People of the Virgin Islands* interpreted F.R.E. 403 as well as 5 V.I.C. § 885. In 2009, F.R.E. 403 was the same as it was in 2008, *supra* at note 15. In *Mulley*, the Court notes "the pertinent clause of the federal rule contains virtually the same language as section 885." *Mulley*, 51 V.I. at 411. Accordingly, the Court does not find any substantive difference to the rules interpreted.

[17] *Old Chief v. United States* cites to F.R.E. 403. In 1997, the rule stated, in pertinent part, that relevant evidence may be excluded when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Again, the Court finds this rule to be substantively the same as current V.I.R.E. 403.

[18] *Krepps v. Government of the Virgin Islands* cites to F.R.E. 403. In 2006, F.R.E. 403 was the same as it was in 2008, *supra* at note 15. Accordingly, the Court does not find any substantive difference to the rules interpreted.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 6 of 20

Cite as 2022 VI Super 82

rather assist them in assessing and understanding the People's allegations regarding Lake's movements on the date of the alleged murder. The People additionally concede that the cell phone location data and corresponding CAST report are not absolutely precise, and that they will indicate and explain the generality of the location data to the jury. They argue the testimony and data regarding the geographic location of Lake's cell phone on the date and time of the alleged murder are relevant and their probative value is not outweighed by prejudice to Lake.

¶7    Defendant's location at the time of the alleged murder is a significant factor in the People's burden. To prove Lake guilty, the People have the burden of indicating Lake's whereabouts at the time of the alleged murder, especially considering Lake's notice that he has an alibi and was not in Smith Bay at the time of the alleged murder. Thus, the Court finds the cellular location data and SSA Carman's testimony thereon to be relevant to possibly showing Lake's location on the day in question and that the probative value of such evidence is not substantially outweighed by unfair prejudice to Lake.

¶8    Under V.I.R.E. 401, evidence with *any* tendency to make a fact more or less probable is relevant so long as the fact is of consequence in determining the action. The Court agrees with Lake's argument that the cellular location data cannot be taken as dispositive of Lake's location on the date of the alleged murder, and even the People concede the inexactitude of location information gleaned from the cellular location data. Regardless, the cellular location data and SSA Carman's testimony explaining same has the tendency to make the location of Lake's cell phone in a general geographic area at the time of the alleged murder more or less probable, especially in light of Lake's notice of alibi. The Court is not persuaded by Lake's argument that the probative value associated with the location evidence is "miniscule" and thereby substantially outweighed by prejudice to Lake. As held by the Virgin Islands Supreme Court, every piece of evidence will

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 7 of 20

Cite as 2022 VI Super 82

be prejudicial to one party or the other. *See, e.g.*, *Billu*, 57 V.I. at 464. The distinguishing factor for the purposes of the V.I.R.E. 403 balancing test is whether a jury would respond negatively to some aspect of the evidence *unrelated* to its tendency to make a fact in issue more or less probable. *Id.* at 465. Given the People's concession that SSA Carman will testify that the location data is based on educated estimations and is not dispositive of Lake's location at the time of the alleged murder, the Court finds little risk for significant adverse effects to the jury's judgment from the presentation of this evidence. Additionally, Lake will have the opportunity to cross examine SSA Carman to ensure the estimated nature of the location information is laid bare.[19] The Court agrees with a federal district court, which noted that an "explanation of how cell towers work and what general location a cell phone user must have been in at the time his cell phone connected to a particular cell tower would be helpful to the jury in understanding the government's claims about the movements and whereabouts of [the defendant]." *United States v. Gatson*, 2015 U.S. Dist. LEXIS 138329, at *8 (D.N.J. 2015) [hereinafter "*Gatson I*"], aff'd 744 F. App'x 97 (3d Cir. 2018) [hereinafter "*Gatson II*"][20] (citing *United States v. Jones*, 918 F. Supp.2d 1, 5 (D.D.C. 2013)). The Court finds the proffered evidence to be relevant and probative under the Virgin Islands Rules of Evidence, because the cellular location data and SSA Carman's CAST report and testimony will provide the jury with context regarding Lake's location on the date of the alleged murder. The jury can then decide for itself how much weight to give the evidence.

---

[19] Lake may also call his own expert witness to rebut the testimony of the People's expert.

[20] In *Gatson II* the Third Circuit affirmed the trial court's decision that a *Daubert* hearing on cell site location data was not necessary, stating "we agree with [the district court's] reasoning and adopt it as our own." *Gatson v. United States*, 744 F. App'x 97, 101 (3d Cir. 2018). The Third Circuit thereby effectively adopted the analysis from the district court and upheld the validity and methodology of cell site location data and testimony thereon by a qualified expert. Though not binding on this Court, that Third Circuit decision carries great weight.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 8 of 20

Cite as 2022 VI Super 82

**B. SSA Carman's testimony is admissible under V.I.R.E. 702 and its supporting case law.**

¶9    V.I.R.E. 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." V.I. R. EVID. 702.[21] Interpreting V.I.R.E. 702, the Virgin Islands Superior Court has utilized a standard requiring satisfaction of three major requirements. *In re Catalyst Litig.*, 55 V.I. 3, 11–12 (V.I. Super. Ct. 2010)[22] (citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)[23]). These requirements are: (1) the expert must be qualified; (2) the expert must give an opinion "about matters requiring scientific, technical, or specialized knowledge," obtained or derived from a reliable process or technique; and (3) the expert's testimony must "assist the trier of fact," in other words, it must "fit" the facts of

---

[21] As discussed, *supra* at notes 7 and 13, many cases cited herein interpret F.R.E. 702, as they were decided prior to the adoption of the Virgin Islands Rules of Evidence in 2017. Currently, F.R.E. 702 is identical to current V.I.R.E. 702. As above, if any of the cited cases interpret a previous version of the rule, the Court will note the difference and determine whether interpretation of the rule is impacted.

[22] *In re Catalyst Litigation* cites to F.R.E. 702. In 2010, F.R.E. 702 read as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

While not identical to current V.I.R.E. 702, the Court finds that the rules are substantively identical, and the changes do not impact interpretation of the rule.

[23] *Pineda v. Ford Motor Co.* cites to F.R.E. 702. The version of F.R.E. 702 referenced in *Pineda* is the same as that utilized in *Catalyst Litigation*, *supra* at note 22. Accordingly, the Court does not find any substantive difference to current V.I.R.E. 702.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 9 of 20

Cite as 2022 VI Super 82

the case. *Id.* at 12 (citing *Pineda*, 520 F.3d at 244; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994)[24]).

¶10    The Virgin Islands Supreme Court has also adopted the United States Supreme Court holding from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which finds a trial court must determine whether the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Antilles Sch., Inc.*, 64 V.I. at 416[25] (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)[26]). Virgin Islands Superior Court judges "serve as 'gatekeepers' when determining whether an expert's opinion is admissible." *Arvidson v. Buchar*, 72 V.I. 50, 76, 2019 VI SUPER 153, ¶ 16[27] (quoting *Daubert*, 509 U.S. at 597). Judges are granted "broad discretion . . . in assessing the relevance and reliability of expert testimony" and performing their "gatekeeping function." *Gatson II*, 744 F. App'x at 102 (quoting *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000)[28]).

¶11    Lake's motion demands the Court conduct a *Daubert* hearing before it allows the cellular location data or SSA Carman's report and testimony to be admitted at trial, as the People provided limited detail regarding the evidence they intend to introduce at trial. Lake argues that further detail

---

[24] *In Re Paoli R.R. Yard PCB Litigation* cites to F.R.E. 702. In 1994, F.R.E. 702 read as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Again, though this rule is not identical to current V.I.R.E. 702, the Court notes that, if anything, additional detail has been added to the new rule.

[25] *Antilles Sch., Inc. v. Lembach* cites to F.R.E. 702. F.R.E. 702 was last amended in 2011, so in 2016, F.R.E. 702 was identical to its current version, and therefore identical to current V.I.R.E. 702.

[26] *Daubert v. Merrell Dow Pharmaceuticals, Inc.* cites to F.R.E. 702. In 1993, F.R.E. 702 was the same as it was in 1994, *see supra* at note 24. Additionally, the Virgin Islands Supreme Court has repeatedly affirmed its adoption of the *Daubert* standard for determining the admissibility of expert testimony.

[27] *Arvidson v. Buchar* cites to V.I.R.E. 702, as the case was decided in 2019, after the Virgin Islands' adoption of its rules of evidence in 2017. Accordingly, the case cites to current V.I.R.E. 702.

[28] *United Stats v. Altorre* cites to F.R.E. 702. In December 2000, F.R.E. 702 was amended. However, the *Altorre* case was decided in August 2000, when the rule was the same as it was in 1994, *supra* at note 24. Accordingly, the Court finds no substantive difference to the current F.R.E. and V.I.R.E. 702.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 10 of 20

Cite as 2022 VI Super 82

and testimony from SSA Carmen is necessary to determine if his intended testimony meets the requirements of V.I. R. EVID. 702. The People respond with significant detail explaining SSA Carman's anticipated testimony, and citation to numerous cases finding a *Daubert* hearing was unnecessary given the well-established nature of the cellular location analysis methodology. *See, e.g., Jones*, 918 F. Supp. 2d at 6–7 (noting "the use of cell phone records to locate a phone has been widely accepted in both federal and state courts across the country," concluding that expert testimony based on cell site data was based on a reliable methodology, and declining to hold *Daubert* hearing); *see also United States v. Porter*, 2016 U.S. Dist. LEXIS 16140, *9 (E.D. La. 2016) (holding that historical cell site analysis satisfies the *Daubert* reliability test and concluding that a hearing was not necessary to determine the reliability of Special Agent's testimony); *United States v. Freeman*, 2015 U.S. Dist. LEXIS 57921, *1 (E.D. Mich. 2015) (declining to hold *Daubert* hearing on challenge to cell site analysis testimony); *Gatson I*, 2015 U.S. Dist. LEXIS 138329, at *1 (holding FBI CAST analysis of call detail records was reliable, relevant, and admissible, and finding that a *Daubert* hearing was unnecessary when defendant did not present a novel challenge to cell site analysis); *United States v. Jackson*, 2017 U.S. Dist. LEXIS 221421, *83–84 (N.D. Ga. 2017) ("Given the overwhelming acceptance of cell site information and the lack of a novel challenge to the underlying methodology," Defendant's Motion to Exclude Historical Cell Site Location Information and Request for *Daubert* Hearing . . . is denied"); and *United States v. Howard*, 2017 U.S. Dist. LEXIS 95138, *13 (C.D. Cal. 2017) (concluding that "a *Daubert* hearing would not be helpful here due to the wide consensus in the judicial community that historical cell site data is a reliable methodology").

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 11 of 20

Cite as 2022 VI Super 82

**1. SSA Carman is qualified to provide testimony regarding cellular location data and the methodology employed to analyze it and create his CAST report.**

¶12    Lake does not make any arguments regarding SSA Carman's qualifications to testify as an expert in this matter and the People point to Lake's lack of argument on this issue, claiming that, for the purposes of the motion *in limine*, SSA Carman's qualifications must be deemed conceded. Though Lake did not raise them as a concern, the Court will briefly assess SSA Carman's qualifications to testify as an expert.

¶13    There is no articulated test, or set of standards, for determining the qualification of a witness as an expert, rather, such determination is left to the discretion of the trial judge. *Catalyst Litig.*, 55 V.I. at 13. The polestar guiding this Court's assessment of qualifications requires that "a proffered expert witness . . . possess skills or knowledge greater than the average layman." *Arvidson*, 72 V.I. at 79 (quoting *ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473, 477 (E.D. Pa. 2001)[29]). Factors considered in making such a determination include education, practical experience, study, research, and general background. *Id.* The People attached SSA Carman's C.V. as Exhibit 1 to their opposition. The C.V. details SSA Carman's extensive and ongoing experience with CAST: he supervises 70 FBI agents and officers nationwide who conduct cellular analysis; he provides cellular record analysis at all levels of government and frequently provides expert testimony; he trains other officers on cellular technology and record analysis; and he has engaged in CAST trainings and certifications frequently over the past approximately 10 years, amounting to over 100 hours of instruction. The Court considers this

---

[29] *ProtoComm Corporation v. Novell Advanced Services, Inc.* cites to F.R.E. 702. In 2001, F.R.E. 702 was the same as that utilized in *Catalyst Litigation*, *supra* at note 22. Accordingly, the Court finds no substantive difference to current V.I.R.E. 702.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 12 of 20

Cite as 2022 VI Super 82

significant leadership, education, training, practical experience, and instruction in cellular record analysis to be extensive and appropriate to inform the laypeople of the jury about the processes involved in assessing cellular location data. Accordingly, in its discretion, the Court deems SSA Carman is qualified to testify as an expert, so long as the aforementioned qualifications are sufficiently demonstrated by the People at trial.

### 2. The methodology upon which SSA Carman intends to base his testimony is sufficiently reliable.

¶14    Lake's main argument is that SSA Carman's testimony will not be based on scientific facts or data, in violation of V.I. R. EVID. 702(b), and that the testimony is not a product of reliable principles or methods, in violation of V.I. R. EVID. 702(c); accordingly, Lake argues that the methodology used to obtain the location evidence is unreliable. He claims the People have failed to show how the location estimates were calculated, and they merely provided shaded maps with no explanation. Specifically, Lake states that "none of the underlying data used to determine the estimated coverage area has been provided" and "no description of the methods applied to create the maps" has been provided. He further contends there is no scientific basis for the data provided by the mobile network operators as to direction and beam width of cell towers which SSA Carman purports to analyze, and that SSA Carman has not personally traveled to St. Thomas to perform such analysis. The People counter that the broad, national consensus is that the methodology underlying analysis and mapping of cellular data is sound and can reliably indicate the general location of a cell phone that was in use at a particular date and time. The People note that the same form of cellular location assessment is performed and used in many United States jurisdictions and has been repeatedly upheld as a reliable methodology in courts across the country, with citations to same. They claim the science is not complicated and is easy to understand, and that the People

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 13 of 20

Cite as 2022 VI Super 82

are not seeking to introduce precise location information, but rather generalized estimations of the Defendant's whereabouts on the date of the alleged murder. Further, the People describe SSA Carman's qualifications and provide detailed descriptions of his anticipated testimony regarding the technical process of cellular location analysis. [30]

¶15    The Virgin Islands Supreme Court has adopted the non-exhaustive list of factors from *Daubert* to determine the reliability of an expert's opinion: "whether the opinion can be (and has been) tested, whether the theory or technique has been subjected to peer review and publication, what the known or potential rate of error is, and the existence and maintenance of standards controlling the technique's operation." *Antilles Sch., Inc.*, 64 V.I. at 416 (citing *Daubert*, 509 U.S. at 593–94). Reliability requires "inquiry into the methodology used as a basis for the expert's conclusions, to ensure that it is grounded in good sense and based on more than mere 'subjective belief or unsupported speculation.'" *People of the Virgin Islands v. Roberts*, 2016 V.I. LEXIS 234, *2 (V.I. Super. Ct. Oct. 25, 2016) (quoting *Belofsky v. General Elec. Co.*, 980 F. Supp. 818, 821 (D.V.I. 1997)).

---

[30] The People state SSA Carman intends to testify that call detail records provided by AT&T reveal the general location of where Defendant's phone was located, when making and receiving calls around the time of the alleged murder. The People further state: a typical cell tower has three distinct antenna faces ("sectors"), each serving a 120-degree portion of roughly circular coverage area from that antenna; the cell site and sector analysis does not determine the exact location of a suspect's phone but shows the general area a phone was likely located based on cell tower location and the sector of the tower used to transmit the call; and whenever a user initiates or receives communication, the cell phone carrier routinely creates a record including date and exact time of contact and what tower and sector on that tower handled the contact. Therefore, the People state SSA Carman will testify that it is possible to determine general geographic location of a cell phone at a specific time. The People state that SSA Carman obtains data from a service provider that identifies which network tower and which sector were utilized, so he does not guess or estimate which tower or towers were used; SSA Carman will testify that a cell phone will seek the tower with the strongest, clearest signal, which generally comes from the tower closest or the tower with the best line of sight; however, SSA Carman will concede that strongest, clearest signal can be affected by many factors and the cell phone does not always connect to the closest tower.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 14 of 20

Cite as 2022 VI Super 82

¶16    While Virgin Islands courts have not yet considered the admissibility of cellular location data or testimony thereon,[31] numerous federal circuit courts, federal district courts, and state courts have upheld the reliability and admissibility of testimony regarding CAST reports and cellular location analysis methodology. *See, e.g., Jackson*, 2017 U.S. Dist. LEXIS 221421, at *83–84; *Howard*, 2017 U.S. Dist. LEXIS 95138, at *13; *Porter*, 2016 U.S. Dist. LEXIS 16140, at *9; *Gatson I*, 2015 U.S. Dist. LEXIS 138329, *5 (*aff'd* 744 F. App'x at 101); *Freeman*, 2015 U.S. Dist. LEXIS 57921, at *1; *Jones*, 918 F. Supp. 2d at 5; *U.S. v. Davis*, No.11-60285-CR, 2013 U.S. Dist. LEXIS 70371, 2013 WL 2156659 (S.D. Fla. May 17, 2013); *United States v. Schaffer*, 439 F. App'x 344, 346–47 (5th Cir. 2011). Notably, the Third Circuit, which represents strongly persuasive authority to Virgin Islands courts, is among the courts which have deemed cellular location analysis methodology and testimony thereon to be reliable and admissible; while the Third Circuit did not perform its own analysis on the topic, it adopted the reasoning and analysis of District Court of New Jersey in an opinion affirming the lower court's denial of a *Daubert* hearing. *See Gatson II*, 744 F. App'x at 101 (referencing *Gatson I*, 2015 U.S. Dist. LEXIS 138329). Other federal district courts have denied a defendant's motion to exclude testimony regarding cellular location data, noting that the methodology was "reliable" and that "the use of cell phone location records to determine the general location of a cell phone has been widely accepted by numerous federal courts." *Jones*, 918 F. Supp. 2d at 5 (citing. *Schaffer*, 439 F. App'x at 347; *United States v. Dean*, No. 09-CR-446, 2012 WL 6568229, at *5 (N.D. Ill. Dec. 14, 2012); *United States v. Fama*, No. 12–CR–186, 2012 WL 6102700, at *3 (E.D.N.Y. Dec. 10, 2012)).

---

[31] The Virgin Islands Superior Court has performed an analysis on legally obtaining historical cellular tower data, under the federal Stored Communications Act, 18 U.S.C. § 2703. *In re Application for a Court Order Authorizing AT&T to Provide Historical Cell Tower Records*, 55 V.I. 127 (V.I. Super. Ct. 2011). But the Court found no opinion of a Virgin Islands court performing analysis regarding the admissibility of such data.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 15 of 20

Cite as 2022 VI Super 82

¶17    The Seventh Circuit has said that the science and methods upon which the technique is based are understood and well documented. *Hill*, 818 F.3d at 299. Specifically, cellular location data "shows the cell sites with which the person's cell phone connected, and the science is well understood." *Id.* at 298 (citing *United States v. Evans*, 892 F.Supp.2d 949, 956 (N.D. Ill. 2012) (noting that methods of "historical cell site analysis can be and has been tested by scientists")). Although a "mathematical error rate has not been calculated, [] the technique has been subjected to publication and peer criticism, if not peer review." *Id.* (citing Matthew Tart et al., *Historical Cell Site Analysis—Overview of Principles and Survey Methodologies*, 8 DIGITAL INVESTIGATION 185–86 (2012); Blank, 18 RICH. J.L. & TECH. at 3–5; Herbert B. Dixon Jr., *Scientific Fact or Junk Science? Tracking A Cell Phone Without GPS*, 53 JUDGES' J. 37 (2014)).[32]

¶18    The Court finds SSA Carman's methodology for his production of the CAST report to be reliable under the prescribed standard. Although, as Defendant notes, SSA Carman's CAST report includes only what appears to be brief explanations of his methodology and maps without detailed explanations, CAST analysis is no longer new or unique or untested. The scientific and legal evidence proving the reliability of CAST methodology is plentiful. As discussed, there is an extensive body of law from other jurisdictions, establishing the reliability of the methodology for procuring cellular location data and the value of explanatory testimony. Significantly, the People argue, not a single court in the United States has rejected CAST data under *Daubert*. In its

---

[32] While peer review is indeed a factor which bolsters reliability, it is not dispositive of the legitimacy or reliability of a scientific technique. In *Daubert*, the Supreme Court noted that "[t]he fact of publication (or lack thereof) in a peer reviewed journal [] will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Daubert*, 509 U.S. at 594.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 16 of 20

Cite as 2022 VI Super 82

independent research, the Court also has not found any case in which CAST data has been excluded under *Daubert*.[33]

¶19    Further, the People have provided a detailed explanation of SSA Carman's anticipated testimony, including his expected description of how cell site location data is collected. This includes the process SSA Carman and his team use to analyze such data using cell sites and sectors, based on which towers a cell phone's incoming and outgoing calls connected to, and how this information is utilized to map an estimation of a cell phone's location on a given date and time.[34] Therefore, the Court is unpersuaded by Defendant's argument that there is insufficient detail provided within the People's proffered evidence.

¶20    Also aiding the Court's finding are both the People's assurance that SSA Carman will testify to the imprecise and "general" nature of the location data and the numerous factors affecting such data as well as Lake's opportunity to cross examine the witness or call his own expert witness to rebut SSA Carman's testimony. Multiple courts have concluded that the external factors affecting "cell signal strength—which an expert may or may not account for—go to the weight of the expert's testimony and is properly the subject of cross examination but does not render the fundamental methodology of cell site analysis unreliable." *See, e.g.*, *Jones*, 918 F. Supp. 2d at 5; *Fama*, 2012 WL 6102700, at *4; *United States v. Allums*, 2009 WL 806748, at *2 (D. Utah Mar.

---

[33] In *United State v. Evans* the court found an expert's testimony regarding the operations of cellular networks to be admissible, however, the Court excluded the expert's discussion of the "theory of granulization," which purportedly predicts the coverage overlap of two closely positioned towers. *Evans*, 892 F. Supp. 2d at 956. The theory at issue in *Evans* is irrelevant to the current case because there is no indication of overlap in coverage by the cellular towers at issue, and neither party raises this as an issue.

[34] SSA Carman's CAST report displays a map of St. Thomas, identifying the scene of the alleged murder in Smith Bay and the location in Bovoni which Lake describes in his notice of alibi, as well as marking the locations of the various cell towers across the island. In each subsequent map within the report, there is a depiction of which cell tower connected to Lake's cell phone at various times throughout the early afternoon of May 16, 2017, based upon the call records provided by AT&T. The Court finds these images instructive, particularly accompanied by the People's detailed explanation of SSA Carman's process and anticipated testimony as well as SSA Carman's C.V., demonstrating his prolific experience with cellular location analysis.

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 17 of 20

Cite as 2022 VI Super 82

24, 2009). Finally, given the nature of the information at issue, the Court finds that the methodology used does not require SSA Carman to have been physically present on St. Thomas to perform his analysis. The People have explained that such cellular location information and data is routinely provided to law enforcement by cellular service providers, and the Court is persuaded that SSA Carman's extensive training and background enable him to appropriately analyze the data remotely.

¶21    Given the extensive history of courts finding reliability in the methodology used in cellular location data analysis, SSA Carman's extensive qualifications and up-to-date training to perform and describe the analysis, the details within the proffered CAST report itself, the repeated utilization and improvement of processes, the robust and peer-critiqued science behind the analysis, the caveats the People present regarding the inexactness of the location data and analysis, and SSA Carman's ability to perform the analysis remotely, the Court finds the data and testimony satisfy many of the factors used to determine reliability, as established in the original *Daubert* case and adopted by the Virgin Islands Supreme Court. Therefore, the Court finds the methodology employed by SSA Carman to create his CAST report and his testimony thereon to be reliable.

### 3.  SSA Carman's testimony fits the facts of the case.

¶22    In order for expert testimony to "fit" the facts of a case, it must be demonstrated that the testimony will "assist the trier of fact." *Catalyst Litig.*, 55 V.I. at 12 (citing *Pineda*, 520 F.3d at 244). There must be a legitimate "connection between the expertise in question and the inquiry being made in the case." *Id.* at 18 (citing *Paoli*, 35 F.3d at 743).

¶23    Lake argues that SSA Carman's testimony will not help the trier of fact understand the evidence, but will mislead the jury, in violation of V.I.R.E. 702(a). Lake claims that because the cellular location data does not provide the exact location of a device at a specific date and time,

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 18 of 20

Cite as 2022 VI Super 82

SSA Carman's testimony cannot definitively place Lake at the scene of the alleged murder. Additionally, he argues that there has been no indication as to the accuracy of the location estimates within the People's discovery or the expert's report. Ultimately, Lake reiterates his argument that SSA Carman's status as "expert" will lead the jury to give great weight to his testimony. However, as discussed above, the People concede that SSA Carman will testify that the location data is not precise, and it is in fact affected by numerous external factors such that a cell phone does not always ping the most proximate or most direct cell tower and sector.

¶24     The Court nonetheless finds that SSA Carman's testimony, as well as the cellular location data itself, will help the trier of fact contextualize the location of Lake's cell phone on the day of the alleged murder. The Court finds that SSA Carman's testimony will not mislead the jury, particularly given the People's immediate concession that the CAST report is not definitive but rather a mere estimation of the location of Lake's cell phone on the date in question. Additionally, given Lake's notice of alibi, the data and SSA Carman's testimony could assist the trier of fact to better contextualize Lake's whereabouts on the day in question. The Court reiterates that Lake can extensively cross examine SSA Carman regarding the accuracy and precision of the cellular location data, to demonstrate to the jury that it is not precise and highlight the extent to which the jury should rely upon such data. Similarly, Lake may also cross examine SSA Carman on how he could have prepared his report without visiting St. Thomas and the cell towers in question and challenge him on same.

¶25     A detailed explanation of the methodology used for cellular location analysis should assist the jury in understanding the People's arguments regarding Lake's location or the location of his cell phone on the date of the alleged murder and provide the jury the knowledge and background to determine for themselves whether they may reasonably conclude Lake can be placed in a general

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 19 of 20

Cite as 2022 VI Super 82

location on the date of the alleged murder. The Court therefore finds the testimony fits the facts of

the case, since it provides context and additional information regarding Lake's whereabouts on the

date in question.

### 4. Because the Court finds SSA Carman's testimony is relevant and reliable, a *Daubert* hearing is not necessary.

¶26     To determine whether a *Daubert* hearing is necessary, a trial court must determine whether

the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to

understand or determine a fact in issue." *Antilles Sch., Inc.*, 64 V.I. at 416 (quoting *Daubert*, 509

U.S. at 592). "The focus is on two considerations: reliability and relevance." *Gatson II*, 744 F.

App'x at 101–02 (quoting *Daubert*, 509 U.S. at 590–91) (the "overarching subject is the scientific

validity and thus the evidentiary relevance and reliability—of the principles that underlie a

proposed submission"). The Court finds no need to hold a *Daubert* hearing to assess SSA

Carman's testimony. It is well established that a court "is not required to hold an evidentiary

hearing regarding the admissibility of expert testimony." *Jones*, 918 F. Supp. 2d at 5 (quoting

*Fama*, 2012 WL 6102700, at *4). Additionally, as established in Sections A and B-2, herein, the

Court finds the methodology used to create SSA Carman's CAST report and his anticipated

testimony thereon to be both relevant and reliable under V.I.R.E. 401, 403, and 702 as well as

*Daubert*. Lake does not raise any specific concerns regarding the methodology utilized in SSA

Carman's analysis, and "the need for a *Daubert* hearing is even less where Defendants raise no

unique arguments to the methodology employed." *United States v. Frazier*, 442 F. Supp. 3d 1012,

1024 (M.D. Tenn. 2020); *see also Gatson I*, 2015 WL 5920931, at *3 (because the defendant did

not "present[] any novel challenges to [the] proposed testimony . . . a *Daubert* hearing is not

necessary"); *U.S. v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004) (finding a *Daubert* hearing not

*People of the Virgin Islands v. Trevorne Lake*
Case No. ST-2018-CR-00037
Memorandum Opinion – Motion *in Limine*
Page 20 of 20

Cite as 2022 VI Super 82

required where no novel challenge is raised); *United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 54 (D.D.C. 2013) (stating "cell phone technology is neither novel nor particularly complex"). Following the numerous rulings from other courts on this issue, and expecting the People lay a proper foundation and appropriately represent the limits of historical cell-site analysis at trial, the data and SSA Carman's testimony are reliable under the pertinent standards and a *Daubert* hearing is unnecessary. *Frazier*, 442 F. Supp. 3d at 1034 (quoting *United States v. Brown*, No. 18-20075, 2019 WL 3543253, at \*6 (E.D. Mich. Aug. 5, 2019).

## CONCLUSION

¶27     Lake's motion *in limine* to exclude cellular location data and SSA Carman's testimony, and his request for a *Daubert* hearing will be denied. The Court finds that the cellular location data and proposed testimony from SSA Carman are relevant and sufficiently probative under V.I.R.E. 401 and 403. Further, the Court finds that SSA Carman is qualified as an expert, his methodology and anticipated testimony are reliable, and his testimony fits with the facts of the case, thereby satisfying the requirements for expert testimony within V.I.R.E. 702. Accordingly, because the Court finds the proposed testimony and cellular location data to be both relevant and reliable, it finds no need to hold a *Daubert* hearing prior to trial. So, Lake's motion will be denied.

An order consistent herewith will immediately follow.

DATED:     September 26, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor 09 / 27 / 22